# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| **MICHAEL BEAVERS**, on behalf of himself and all others similarly situated, | Civil Case No.: 2:22-cv-02429-BHH |
| *Plaintiff*, | Judge Bruce Howe Hendricks |
| v. | |
| **THS GROUP LLC d/b/a SERVICEPLUS HOME WARRANTY**, and **DAVID SERUYA**, | **SECOND AMENDED COMPLAINT - CLASS ACTION** |
| *Defendants*. | **JURY TRIAL DEMANDED** |

## INTRODUCTION

1.     This action arises out of the relentless marketing practices of Defendants, THS Group LLC d/b/a ServicePlus Home Warranty f/d/b/a Total Home Protection ("ServicePlus") and David Seruya ("Seruya") (together, "Defendants"), that violate the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq* and the South Carolina Telephone Privacy Protection Act, S.C. Code Ann. § 37-21-10, *et seq*.

2.     Defendants have a long history of engaging in deceptive business practices related to the advertisement and sale of home warranties.

3.     For example, on March 5, 2020, Defendants, while doing business as Total Home Protection, were sued by the Commonwealth of Pennsylvania, Office of Attorney General ("PAOAG"), for violations of the Unfair Trade Practices and Consumer Protection Law, 73 P.S. § 201-1 related to their advertising and sale of home warranties.[1]

4.     The PAOAG's Complaint outlines a long history of deceptive practices by the

---

[1] *See https://www.attorneygeneral.gov/wp-content/uploads/2020/03/THP_CIE_WITH_EXHIBITS_FILED.pdf* (last accessed July 11, 2022).

principals/owners' prior warranty companies and related investigations by various governmental entities.[2]

5.      The PAOAG's Complaint alleged that Defendants advertised and sold home warranty service contracts to many elderly or otherwise vulnerable consumers in Pennsylvania and dozens of other states by: falsely advertising coverage and services, using creative and deceptive means to wrongfully deny covered claims, failing to respond to consumer claims and inquiries, and refusing to reimburse or refund consumers in accordance with the terms of their written guarantees.

6.      Defendants entered into a settlement agreement with the PAOAG on December 8, 2021, that required Defendants to make meaningful, substantial and specific changes to their business practices, including but not limited to sales policies, claims evaluation process, the cancellation process, and customer service policies.[3]

7.      Prior to entering into their settlement agreement with the PAOAG, in May 2021, Defendants rebranded from Total Home Protection to ServicePlus.[4]

8.      Upon information and belief, Defendants rebranded to escape the stigma of being associated with a PAOAG investigation and settlement, and a plethora of poor online reviews and complaints attributed to Total Home Protection.

9.      ServicePlus continues to receive poor reviews and consumer complaints.

10.     For example, ServicePlus has received over 1,450 customer complaints via the Better Business Bureau and has an average 1.34/5 star rating based on 921 customer reviews.

---

[2] *Id.* at 8-14.

[3] *See* https://www.attorneygeneral.gov/wp-content/uploads/2021/12/2021-12-08-Consent-Petition-with-Defendants-THS-Group-LLC-and-David-Seruya-Filed.pdf (last accessed July 11, 2022).

[4] https://www.pr.com/press-release/835997 (last accessed July 11, 2022).

11.     In an effort to obtain new customers, ServicePlus has implemented a scheme to call consumers without the requisite consent.

12.     ServicePlus makes these calls, or has these calls made on its behalf, using an artificial or prerecorded voice.

13.     Accordingly, Plaintiff brings this action on behalf of himself and classes of similarly situated individuals.

**JURISDICTION AND VENUE**

14.     This Court has subject matter jurisdiction under 28 U.S.C. § 1331, as this action arises under the TCPA, which is a federal statute.

15.     This Court also has supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367(a), because such claims are so closely related to the federal claim that they form a single case or controversy.

16.     This Court has jurisdiction over ServicePlus because ServicePlus conducts business transactions in this District, ServivePlus has committed tortious acts in this District, and ServicePlus purposefully directed its telemarketing activities at residents within this District.

17.     This Court has jurisdiction over Seruya because Seruya conducts business transactions in this District, Seruya has committed tortious acts in this District, and Seruya purposefully directed SerivePlus' telemarketing activities at residents within this District.

18.     Venue is proper in this District because Defendants conduct significant amounts of business transactions within this District and because some of the wrongful conduct giving rise to this case occurred in, was directed to, and/or emanated from, this District.

**PARTIES**

19.     Plaintiff Michael Beavers ("Mr. Beavers") is, and at all times mentioned herein

was, a citizen and resident of Charleston, South Carolina.

20.     Mr. Beavers is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

21.     Mr. Beavers is, and at all times mentioned herein was, a "consumer" as defined by S.C. Code Ann. § 37-21-20(1).

22.     ServicePlus is, and at all times mentioned herein was, a Pennsylvania limited liability company headquartered at 518 Old Post Rd Suite 7 #315, Edison, NJ 08837.

23.     ServicePlus is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153 (39).

24.     ServicePlus is, and at all times mentioned herein was, a "telephone solicitor" as defined by S.C. Code Ann. § 37-21-20(7).

25.     David Seruya ("Seruya") is an individual residing in West Allenhurst, New Jersey.

26.     At all relevant times, Seruya owned, operated, and was an officer, employee and agent of ServicePlus.

27.     Seruya is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153 (39).

28.     Seruya is, and at all times mentioned herein was, a "telephone solicitor" as defined by S.C. Code Ann. § 37-21-20(7).

## TCPA BACKGROUND

29.     In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry.  In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy[,]" and found that federal legislation was needed because "telemarketers [could] evade [state-law] prohibitions through interstate operations.'" *Mims v.*

*Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012) (citations omitted).

30.    Relevant here, the TCPA prohibits making any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an artificial or prerecorded voice.  47 U.S.C. §227(b)(1)(A).

31.    A person or entity can be liable for calls made on its behalf in violation of the TCPA, even if that person or entity did not directly dial such calls.  *See, e.g., In re Rules & Regs. Implementing the TCPA*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995) (explaining that the FCC's "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any [TCPA] violations").  In fact, in May 2013, the FCC issued a binding declaratory ruling clarifying that sellers "may be held vicariously liable under federal common law principles of agency for TCPA violations committed by third-party telemarketers . . . under a broad range of agency principles, including not only formal agency, but also principles of apparent authority and ratification."  *In re Joint Petition Filed by DISH Netowrk, LLC et al. for Declarator Ruling Concerning the TCPA Rules*, 28 FCC Rcd. 6574, 6584 ¶28 (2013).

32.    Accordingly, an entity can be liable under the TCPA for a prohibited call made on its behalf under a number of theories including vicarious liability.  Under those circumstances, the seller is properly deemed to have initiated the call through the person or entity that actually placed the call.

33.    Under the TCPA, Mr. Seruya is personally liable for the acts and omissions alleged in this Complaint.  *See Connor v. Lifewatch, Inc.*, No. 2:14-cv-00347-CWH, 2014 Dist. LEXIS 117475, at *8-9 (D.S.C. July 29, 2014) (recognizing individual liability in TCPA cases); *Maryland v. Universal Elections*, 787 F.Supp.2d 408, 415-417 (D. Md. 2011) ("if the State of Maryland can prove that Henson and Russell directly participated in or authorized the statutory violations, they

may be personally liable under the TCPA").

34.    When considering individual officer liability under the TCPA, other Courts have agreed that a corporate officer involved in the calls at issue may be personally liable under the TCPA. *See, e.g., Jackson Five Star Catering, Inc. v. Beason*, 2013 U.S. Dist. LEXIS 159985, \*10 (E.D. Mich. Nov. 8, 2013) ("[M]any courts have held that corporate actors can be individually liable for violating the TCPA "where they 'had direct, personal participation in or personally authorized the conduct found to have violated the statute.'"); *Universal Elections,* 787 F. Supp. 2d at 415-16 ("If an individual acting on behalf of a corporation could avoid individual liability, the TCPA would lose much of its force.").

## SOUTH CAROLINA TELEPHONE PRIVACY PROTECTION ACT BACKGROUND

35.    The South Carolina Telephone Privacy Protection Act ("SCTPPA") was enacted in 2018 to provide greater protections to South Carolina residents, like Mr. Beavers, targeted by telephone solicitors.

36.    Among other regulations, a telephone solicitor may not make unwanted calls to persons who state a desire not to be contacted again:

> **A person may not initiate, or cause to be initiated, a telephone solicitation directed to a telephone number when a person at that telephone number previously stated a desire not to be contacted again** by or on behalf of the person on whose behalf the telephone solicitation is being made. This statement may be made to a telephone solicitor or to the person on whose behalf the telephone solicitation is being made if that person is different from the telephone solicitor. **Any request not to receive telephone solicitations must be honored for at least five years from the time the request is made**.

S.C. Code. Ann. § 37-21-70(A).

## FACTUAL ALLEGATIONS

37.    Mr. Beavers is the user of a cellular telephone number ending in 1850.

38.    On May 26, 2022, Mr. Beavers received a telephone call from 844-453-0706 that

played the following 34 second prerecorded message:

> Hi this is Emily from ServicePlus, your current home warranty provider. Please know that your home warranty plan has expired or is about to expire. Theres still time to renew your plan today, and get two months of coverage absolutely free. Please do not make the mistake of being left without a home warranty coverage. So give us a call back at 844-YES-COVER-ME. Thats 844-YES-COVER-ME. 844-937-2683. Talk to you soon. Bye!

(hereinafter the "Prerecorded Solication").

39.    ServicePlus is not Mr. Beavers' current home warranty provider.

40.    Mr. Beavers never had a home warranty with ServicePlus.

41.    When the number (844) 453-0706 is called back, an automated message plays that

states the caller has reached ServicePlus.

42.    Upon information and belief, ServicePlus solicits consumers to "renew" a home

warranty policy that they did not have in the first place.

43.    ServicePlus called Mr. Beavers (from 844-453-0706) and played the same

Prerecorded Solicitation on at least the following dates:

- May 20, 2022;
- May 23, 2022;
- May 24, 2022;
- May 25, 2022;
- May 27, 2022;
- May 30, 2022;
- June 1, 2022;
- June 2, 2022;
- June 7, 2022;
- June 10, 2022;
- June 20, 2022;

7

- June 21, 2022;
- June 27, 2022;
- July 8, 2022;
- July 27, 2022;
- August 3, 2022;
- August 5, 2022;
- August 10, 2022; and
- August 11, 2022.

44. On May 25, 2022, Mr. Beavers wrote to ServicePlus (to info@serviceplus.com) and requested that the calls stop.

45. ServicePlus did not provide Mr. Beavers with the courtesy of a response and continued to call him.

46. Mr. Beavers did not provide prior express invitation or permission or consent for these telephone calls. To the contrary, in response to the unwanted calls, Mr. Beavers repeatedly requested that ServicePlus cease calling him.

47. Upon information and belief, ServicePlus uses multiple different numbers to call consumers with the same prerecorded messages received by Mr. Beavers.

48. For example, consumers have turned to the internet to complain about ServicePlus' telemarketing and have identified the following telephone number as "harassing" and attempting to "scam" them: (844) 998-0177[5].

49. When the number (844) 998-0177 is called back, an automated message plays that states the caller has reached ServicePlus.

50. On information and belief, Seruya is the only officer of ServicePlus and had direct, personal participation in, and personally authorized, the acts or omissions complained of herein that violate the TCPA.

---

[5] https://lookup.robokiller.com/p/844-998-0177 (last accessed July 12, 2022).

51.    Specifically, Seruya was responsible for the final approval of all solicitation materials, including the recorded scripts used during the illegal calls.

52.    Seruya hired the third-party vendors that made calls on behalf of ServicePlus and authorized them to make the calls using the technologies and systems that were subject to TCPA regulation.

53.    Seruya approved of and authorized the provision of calling lists to ServicePlus' vendors to make the calls at issue.

54.    Accordingly, Seruya is individually and directly liable for the violations of the TCPA.

55.    Defendants' violations were negligent.

56.    Alternatively, Defendants' violations were willful and knowing.

57.    Mr. Beavers and the classes were damaged by the violations alleged herein.  Their privacy was improperly invaded, the ServicePlus calls temporarily seized and trespassed upon the use of their phones, and/or they were forced to divert attention away from other activities to address the unwanted telephone calls.  Defendants' telephone calls were annoying and a nuisance, and wasted the time of Mr. Beavers and the class members.  *See, e.g., Mims,* 565 U.S. at 372 (discussing congressional findings of consumer "outrage" as to prerecorded calls).

## DEFENDANT'S LIABILITY

58.    Defendants use automated systems to make outbound prerecorded telephone solicitation calls to hundreds if not thousands of consumers across the U.S.

59.    Defendants made multiple telephone calls to Mr. Beavers and TCPA Class members, using an artificial or prerecorded voice without their prior express consent.

60.    These calls were not for an emergency purpose.

61.    This constitutes a violation of 47 U.S.C. § 227(b)(1).

62.    Accordingly, for violations of 47 U.S.C. § 227(b)(1), Mr. Beavers and the TCPA Class members are entitled to $500 per call pursuant to 47 U.S.C § 227(b)(3)(B).

63.    Mr. Beavers and the TCPA Class members are entitled to $1,500 per call if Defendants' actions are found to be knowing or willful.

64.    Defendants' initiated, or caused to be initiated, a telephone solicitation directed to telephone numbers when a person at that telephone number previously stated a desire not to be contacted again by or on behalf of the person on whose behalf the telephone solicitation is being made.

65.    This constitutes a violation of S.C. Code Ann. § 37-21-70.

66.    Accordingly, for violations of S.C. Code Ann. § 37-21-70, Mr. Beavers and the SC Class members are entitled to $1000 per call pursuant to S.C. Code Ann. § 37-21-80(A).

67.    Mr. Beavers and the SC Class members are entitled to $5,000 per call if Defendants' actions are found to be willful.

## CLASS ACTION ALLEGATIONS

68.    Mr. Beavers brings this action under Fed. R. Civ. P. 23 on behalf of two proposed "Classes," as defined as follows:

## THE CLASSES

All persons throughout the United States (1) to whom ServicePlus placed, or caused to be placed, a call, (2) directed to a number assigned to a cellular or residential telephone service, but not assigned to a ServicePlus customer or warranty holder, (3) in connection with which ServicePlus used an artificial or prerecorded voice, (4) from four years prior to the filing date of this Complaint through the date of class certification.

10

("TCPA Class")

All persons in South Carolina (1) to whom ServicePlus (1) initiated, or caused to be initiated, (2) a telephone solicitation (3) directed to a telephone number when a person at that telephone number previously stated a desire not to be contacted again; (4) during the applicable statute of limitations period. ("SC Class")

(The TCPA Class and the SC Class are collectively referred to herein as the "Classes.")

69.    Excluded from the Classes are Defendants and any entities in which Defendants have a controlling interest; Defendants' agents and employees; any Judge and Magistrate Judge to whom this action is assigned and any member of their staffs and immediate families, and any claims for personal injury, wrongful death, and/or emotional distress.

70.    The Members of the Classes for whose benefit this action is brought are so numerous that joinder of all members is impracticable.

71.    The exact number and identities of the persons who fit within the Classes are ascertainable in that Defendants and third parties maintain written and electronically stored data showing:

a.  The time period(s) during which Defendants made their telephone calls;

b.  The telephone numbers to which Defendants made telephone calls;

c.  The telephone numbers for which Defendants had prior express written consent;

d.  The telephone numbers of persons who requested not to be contacted again by ServicePlus;

e.  The purposes of such telephone calls; and

f.  The names and addresses of Class members.

72.    The Classes are comprised of hundreds, if not thousands, of individuals.

73.    There are common questions of law and fact affecting the rights of the Members of the Classes, including, *inter alia*, the following:

11

    a.  Whether Defendants (or someone acting on their behalf) make prerecorded telemarketing calls;

    b.  Whether Defendants (or someone acting on their behalf) continue to make telephone solicitations to persons after receiving a request not to do so;

    c.  Whether Defendants (or someone acting on their behalf) obtains prior express written consent;

    d.  Whether Defendants' statutory violations were willful and knowing; and

    e.  Whether Defendants should be enjoined from engaging in such conduct in the future.

74.    Plaintiff is a member of the Classes in that Defendants placed a prerecorded telephone call to his cellular telephone number, without his prior express written consent, and he requested not to be contacted further, but received additional telephone solicitations.

75.    Plaintiff's claims are typical of the claims of the Members of the Classes in that they arise from Defendants' uniform conduct and are based on the same legal theories as these claims.

76.    Plaintiff and all putative Members of the Classes have also necessarily suffered concrete harm in addition to statutory damages, as all Members of the Classes spent time tending to Defendants' unwanted calls and suffered a nuisance and an invasion of their privacy.

77.    Plaintiff has no interests antagonistic to, or in conflict with, the Classes.

78.    Plaintiff will thoroughly and adequately protect the interests of the Classes, having retained qualified and competent legal counsel to represent him and the Classes.

79.    Defendants have acted and refused to act on grounds generally applicable to the Classes, thereby making injunctive and declaratory relief appropriate for the Classes.

80.     The prosecution of separate actions by individual class members would create a risk of inconsistent or varying adjudications.

81.     A class action is superior to other available methods for the fair and efficient adjudication of the controversy since, *inter alia*, the damages suffered by each class member make individual actions uneconomical.

82.     Common questions will predominate, and there will be no unusual manageability issues.

**FIRST CAUSE OF ACTION**
**Violations of the TCPA, 47 U.S.C. § 227(b)(1)**
**(On Behalf of Plaintiff and the TCPA Class)**

83.     Plaintiff repeats and re-alleges each and every factual allegation contained in paragraphs 1-82.

84.     Defendants violated 47 U.S.C. § 227(b)(1) by using an artificial or prerecorded voice in connection with the calls they placed to Plaintiff's telephone number and the telephone numbers of the Class members, without consent.

85.     As a result of Defendants' violations of 47 U.S.C. § 227(b)(1), Plaintiff and the Members of the TCPA Class are entitled to damages in an amount to be proven at trial.

**SECOND CAUSE OF ACTION**
**Violations of S.C. Code Ann. § 37-21-70**
**(On behalf of Plaintiff and the SC Class)**

86.     Plaintiff repeats and re-alleges each and every factual allegation contained in paragraphs 1-82.

87.     Defendants violated S.C. Code Ann. § 37-21-70 by initiating, or causing to be initiated, a telephone solicitation directed to a telephone number when a person at that telephone number previously stated a desire not to be contacted again by or on behalf of Defendants.

88.     As a result of Defendants' violations of S.C. Code Ann. § 37-21-70, Plaintiff and the Members of the SC Class are entitled to damages in an amount to be proven at trial.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Classes, prays for the following relief:

A.      An order certifying the Classes as defined above, appointing Plaintiff as the representatives of the Classes and appointing their counsel as Class Counsel;

B.      An order declaring that Defendants' actions, as set out above, violate the statutes referenced herein;

C.      An award of injunctive and other equitable relief as necessary to protect the interests of the Classes, including, *inter alia*, an order prohibiting Defendant from engaging in the wrongful and unlawful acts described herein;

D.      An award of statutory damages;

E.      An award of treble damages;

F.      An award of reasonable attorneys' fees and court costs; and

G.      Such other and further relief that the Court deems reasonable and just.

## JURY DEMAND

Plaintiff requests a trial by jury of all claims that can be so tried.

**Dated:** May 11, 2023

/s David Maxfield_____
David A. Maxfield, Esq. Fed ID 6293
DAVE MAXFIELD, ATTORNEY, LLC
PO Box 11865
Columbia, South Carolina 29211-1865
(803) 509-6800
dave@consumerlawsc.com

Max S. Morgan, Esquire
Eric H. Weitz, Esquire
**THE WEITZ FIRM, LLC**
1515 Market Street, #1100
Philadelphia, PA 19102
Tel: (267) 587-6240
Fax: (215) 689-0875
max.morgan@theweitzfirm.com
eric.weitz@theweitzfirm.com

*Attorneys for Plaintiff*